**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES WATSON, JOSEPH AVITABILE, THOMAS McGLADE and ROBERT SHEEHAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>- against -<br><br>CONSOLIDATED EDISON OF NEW YORK and THE CONSOLIDATED EDISON PENSION AND BENEFITS PLAN,<br><br>Defendants. | Case No.: 08-CV-4436 (JSR) |

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1.    Standards Governing A Motion To Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2.    Defendants' Motion Is Based On The Impermissible
        Submission Of Documents And Factual Arguments That
        Fall Outside The Four Corners Of The Complaint . . . . . . . . . . . . . . . . . . . . . . 6

    3.    Plaintiffs Have Adequately Pled Standing Under ERISA
        And Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        a.    Plaintiffs Need Not Allege An Injury-In-Fact With
                Respect To Their Breach Of Fiduciary Duty Claims . . . . . . . . . . . . . . . 8

        b.    Plaintiffs Have Also Alleged An Injury-In-Fact To
                Satisfy Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        c.    Plaintiffs Have Alleged A Redressable Injury . . . . . . . . . . . . . . . . . . . . 15

    4.    Plaintiffs' State Law Claims Are Not Preempted By ERISA . . . . . . . . . . . . . . 16

    5.    Plaintiffs' Releases Provide No Basis For Dismissal Of
        Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    6.    Plaintiffs' Claims Are Not Barred By The Statute Of
        Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Baker v. Kingsley,*
  2007 U.S. Dist. LEXIS 39935 (N.D. Ill. May 31, 2007) .......................................... 20

*Campanella v. Mason Tenders' District Council Pension Plan,*
  299 F. Supp. 2d 274 (S.D.N.Y. 2004) ....................................................................... 21

*Central States Southeast and Southwest Areas Health and Welfare Fund
  v. Merck-Medco Managed Care, L.L.C.,*
  433 F.3d 181 (2d Cir. 2005) ..................................................................................... 11

*DePace v. Matsushita Electric Corp.,*
  257 F. Supp. 2d 543 (S.D.N.Y. 2003) ....................................................................... 20

*Devlin v. Transportation Communications Intern. Union,*
  173 F.3d 94 (2d Cir. 1999) ........................................................................................ 16

*Engler v. Cendant Corp.,*
  434 F. Supp. 2d 119 (S.D.N.Y. 2006) ......................................................... 16, 18, 19

*Envirosource, Inc. v. Horsehead Resource Development Co., Inc.,*
  1996 U.S. Dist. LEXIS 9099 (S.D.N.Y. July 1, 1996) ............................................... 8

*Faulkner v. Beer,*
  463 F.3d 130 (2d Cir. 2006) ........................................................................................ 7

*Global Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) ........................................................................................ 7

*Horvath v. Keystone Health Plan East, Inc.,*
  333 F.3d 450 (3d Cir. 2003) ................................................................................. 10, 11

*Hunt v. Pritchard Industries, Inc.,*
  2007 U.S. Dist. LEXIS 47749 (S.D.N.Y. July 3, 2007) ............................................. 5

*In re JPMorgan Chase Sec. Litigation,*
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ........................................................................ 5

*Lily v. Oneida, Ltd. Employee Benefits Administrative Committee,*
  2008 U.S. Dist. LEXIS 37838 (N.D.N.Y. May 8, 2008) .......................................... 11

ii

*Linder v. BYK-Chemie USA, Inc.*,
   2006 U.S. Dist. LEXIS 13823 (D. Conn. March 10, 2006) ................................ 19, 20

*Luckett v. Bure*,
   290 F.3d 493 (2d Cir. 2002) ................................................................... 6, 7

*Martin v. Pate*,
   749 F. Supp. 242 (S.D. Ala. 1990) .......................................................... 18

*Matthews v. Chevron Corp.*,
   362 F.3d 1172 (9th Cir. 2004) ............................................................... 15

*Miller v. Lay Trucking Co.*,
   606 F. Supp. 1326 (N.D. Ind. 1985) ........................................................ 18

*Perry v. P*I*E Nationwide, Inc.*,
   872 F.2d 157 (6th Cir. 1989), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1166,
   107 L. Ed. 2d 1068 (1990) ..................................................................... 18

*Pilot Life Insurance Co. v. Dedaux*,
   481 U.S. 41 (1987) ............................................................................... 18

*Ross v. Bank of America, N.A. (U.S.A.)*,
   2008 U.S. App. LEXIS 8927, 2008 WL 1836640 (2d. Cir. 2008) ......................... 11

*The American Medical Association v. United Healthcare Corp.*,
   2007 U.S. Dist. LEXIS 44196 (S.D.N.Y. June 18, 2007) .................................. 9

*United States of America v. Yonkers Branch-National Association for the
   Advancement of Colored People*,
   893 F.2d 498 (2d Cir. 1990) ................................................................... 8

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ............................................................................. 15

*Yablon v. Stroock & Stroock & Lavan Retirement Plan and Trust*,
   2002 U.S. Dist. LEXIS 10528 (S.D.N.Y. June 12, 2002) ................................ 19, 20

## STATE CASES

*HealthAmerica v. Menton*,
   551 So. 2d 235 (Ala. 1989), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1166,
   107 L. Ed. 2d 1069 (1990) ..................................................................... 18

iii

**FEDERAL STATUTES**

ERISA § 404   ............................................................................................................. 9

ERISA § 409(a) ..................................................................................................... 11, 12

ERISA § 413   ............................................................................................................. 21

**MISCELLANEOUS**

New York State General Obligation Law §5-501 ........................................................ 18

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants'[1]

motion to dismiss Plaintiffs' Class Action Complaint (the "Complaint").

## PRELIMINARY STATEMENT

This action has been brought on behalf of Con Ed employees who devoted their working

careers to the Company and who finally reached a point in their lives that they were offered early

retirement by Con Ed.

As part of their motivation to take early retirement, Plaintiffs and other Con Ed

employees who were entitled to pensions but were not old enough to begin receiving Social

Security payments, were told by Defendants that by electing the Level Income Option they would

receive their pensions and monthly advances of their estimated Social Security benefit for a

certain number of years and that once they began receiving Social Security benefits their

pensions would be reduced until the advances were paid back. However, the Plaintiffs and other

retirees were never informed of the interminable Sisyphisean nature of the Level Income Option:

the reductions to their pensions would continue for the remainder of their lives, no matter how

long they live and no matter how much money they would pay back to Con Ed. Simply put,

Plaintiffs were deceived and fraudulently induced to elect the Level Income Option based on

Defendants' gross breaches of their fiduciary duties in violation of ERISA and other state laws.

Amazingly, nowhere in their dismissal papers do Defendants even challenge Plaintiffs'

allegations that: (1) Con Ed failed to disclose to employees that the deductions from the pensions

of retirees who elect the Level Income Option would be for life, (2) early retirees were

fraudulently induced into electing the Level Income Option, and (3) the amounts that retirees will

have deducted from their pensions could be in the hundreds of thousands of dollars or hundreds

of percent beyond the amounts that were advanced to them. Instead, in a desperate attempt to

---

[1]    The term "Defendants" refers to Consolidated Edison of New York and The
Consolidated Edison Pension and Benefits Plan (collectively referred to as "Con Ed").

1

extinguish Plaintiffs' claims, Defendants seek to distract this Court with the submission of hundreds of pages of documents that are not part of the record and a litany of unsupportable factual arguments, all of which fall far outside the scope of the Complaint and are grossly improper at this stage of the litigation. In sum, Defendants argue that Plaintiffs' Complaint should be dismissed because (1) Plaintiffs lack standing because they purportedly suffered no injury, (2) Plaintiffs' state law claims are preempted, (3) three of the four Plaintiffs signed releases, and (4) three of the four Plaintiffs' ERISA claims are barred by the Statute of Limitations.

As discussed further below, the Plaintiffs in this Action are the victims of Defendants' gross fiduciary breaches and other violations; they have suffered and are suffering extensive injuries stemming from those violations. Additionally, Plaintiffs' claims are neither preempted, released, nor barred by the Statute of Limitations. Thus, none of Defendants' arguments, properly made or otherwise, warrant a dismissal of Plaintiffs' well-pled claims.

## FACTUAL SUMMARY

On or before June 1999, Con Ed began implementing an employee early retirement program, which was offered to Plaintiffs and Class members. Among the pension options offered was a Level Income Option. According to the Consolidated Edison Pension and Benefits Plan – subtitled "The Company You Know. The People You Trust" – the Level Income Option provides:

> If you elect this option, an estimate is made of your Social Security benefits payable at Age 62 or your Normal Social Security Benefit Retirement Age, whichever you select. The payment of your pension benefit is adjusted so that you receive the actuarial equivalent of your pension. You receive a higher pension benefit from the date of your retirement to your choice of Age 62 or Normal Social Security Age, and a lower pension benefit thereafter.

Beginning in or about July 1999, Defendants held meetings with employees, including Plaintiffs and Class members, to discuss their retirement options, including the Level Income

Option.  Defendants' presentations of the early retirement plans and the Level Income Option

were made by individuals from Con Ed's benefits and compensation department pursuant to

standardized training and plan description practices, including standard examples.  In the

presentations held by Defendants for those retiring early, including Plaintiffs and Class members,

the Level Income Option was described as a monthly loan program that would facilitate early

retirement by raising their income until they became eligible for Social Security.  At the time of

these meetings, eligible Con Ed employees had various options, including not retiring or taking

early retirement and not electing the Level Income Option.

      The loans would cease when the retirees reached either 62 or their full Social Security

retirement benefit age, whichever Level Income Option they chose.  At that point, Social Security

would kick in and the monthly pension checks would be reduced until the loans are paid back.

During these presentations, the Defendants fraudulently induced the employees being offered

early retirement to opt for the Level Income Option, by representing to them that the reduction to

their pension benefits was capped and would cease upon repayment of the loans.

      These standardized presentations failed to disclose, and the materials provided to

Plaintiffs did not state, that any interest would be required to be paid on these loans.  They further

failed to disclose that the monthly pension benefits of early retirees who accepted the Level

Income Option would be reduced for life, regardless of how long they lived, regardless of when

the loan was paid back, regardless of any interest rate that might be applied, and regardless of

how much in excess of the loan was paid.  They failed to disclose that the loan would never be

retired and that the pensions would be reduced forever, compelling retirees to pay to Con Ed as

much as 3, 4, 5 times and more of the amounts advanced to them.

      It was only natural that Plaintiffs would look to and rely upon Defendants'

misrepresentations.  Plaintiffs reposed trust and confidence in Defendants given their, in most

cases, over 30 years of employment with Con Ed.  This trust and confidence was only heightened

3

by the Defendants' superior knowledge and expertise in the fields of finance and retirement benefit plans. Defendants employ numerous attorneys, pension experts, actuaries, and other experts who could have, but did not, state orally or in any writing that the pension benefits would be reduced for the remainder of the retirees' lives. Based upon the misrepresentations, omissions, and encouragement of the Defendants, and their agents or employees, Plaintiffs and other Class members chose the Level Income Option. Had Plaintiffs and Class members been adequately informed, as required under ERISA, that the Level Income Option would reduce the value of their pensions by tens, if not hundreds, of thousands of dollars, Plaintiffs and Class members would never have elected this option.

However, well after choosing the Level Income Option, and long after the time to change or cancel their selection of the leveling option, Plaintiffs and Class members discovered that their payback of the loan, in the form of reduced monthly pension benefits, was never-ending, could be many times the amount they received and they would be making repayments for the remainder of their lives, no matter how long they lived. Moreover, there was no option or opportunity to prepay the loan. Nor was there any amount Plaintiffs or Class members could pay which would discontinue their perpetual repayments to Defendants.

By way of example, a Class member who retires at 56 under the early retirement plan and chooses the age 66 Leveling Income Option, will receive a loan of approximately $543.56 a month for a total loan of $62,509.40 ($543.56 per month for 115 months), until he or she begins to receive Social Security benefits. At that time, the retiree is required to pay back approximately $796.24 a month, forever. Should that Class member live to age 75, he would have paid back $85,993.92 ($796.24 a month for 108 months), or 138% of the amount advanced; if he lives until 85, he would have paid back $181,542.72 ($796.24 a month for 228 months), or 290% of the amount advanced; and if he lives to 95 he would have paid back $277,091.52 ($796.24 a month for 348 months), or 443% of the amount advanced.

4

Similarly, a Class member who retires at 55 under the early retirement plan and chooses the age 62 Leveling Income Option, will receive a loan of approximately $838.13 a month for a total loan of $67,888.53 ($838.13 per month for 81 months), until he or she begins to receive Social Security benefits. At that time, the retiree is required to pay back approximately $999.17 a month. Should that Class member live to age 75, he would have paid back $155,870.52 ($999.17 a month for 156 months), or 230% of the amount advanced; if he lives until 85, he would have paid back $275,770.92 ($999.17 a month for 276 months), or 406% of the amount advanced; and if he lives to 95 he would have paid back $395,671.32 ($999.17 a month for 396 months), or 583% of the amount advanced. Thus, under any of these scenarios, a Class member would pay back tens, if not hundreds, of thousands of dollars above the amount of the advances received from Con Ed.

## ARGUMENT

### 1.    Standards Governing A Motion To Dismiss

As stated by this Court in *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 615 (S.D.N.Y. 2005), "[w]hen reviewing a motion to dismiss a complaint for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), a district court . . . must treat all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor." [Citations omitted] Furthermore, "[a] Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, 'the Court must limit its analysis to the four corners of the complaint.'" *Hunt v. Pritchard Industries, Inc.*, 2007 U.S. Dist. LEXIS 47749, at *10 (S.D.N.Y. July 3, 2007). Thus, "[w]hen additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56." *Id.* at *10 n. 5.

2.     **Defendants' Motion Is Based On The Impermissible Submission Of Documents And Factual Arguments That Fall Outside The Four Corners Of The Complaint**

In their effort to convince this Court that dismissal is warranted because Plaintiffs lack constitutional standing under Article III, Defendants have submitted to this Court hundreds of pages of documents that are neither attached to nor referenced in Plaintiffs' Complaint. Moreover, based on these documents, Defendants ask this Court to accept a litany of factual assertions that the Plaintiffs have not been damaged because "the Plan documents here require that all forms of payment options, including the Level Income Option, be actuarially equivalent to one another." MTD at 1.[2]

More specifically, Defendants have submitted with their motion the Affidavit of Hector J. Reyes ("Reyes Aff.") (the Director of Benefits and Compensation for Con Ed), which attaches 23 documents amounting to nearly 500 pages of material.[3] While Defendants base the bulk of their arguments on these documents, they fail to proffer any basis for this Court to consider them in reviewing Defendants' motion to dismiss. Simply put, they make no effort to show that these documents have either been attached to or referenced in Plaintiffs' Complaint. Instead, Defendants incorrectly rely on the broad contention that the "Court may also consider additional evidence for the purpose of adjudicating the Article III standing issue discussed below, since it is a matter that determines this Court's subject-matter jurisdiction and thus may be considered under Federal Rule of Civil Procedure 12(b)(1)." MTD at 4 n. 2, citing *Luckett v. Bure*, 290 F.3d

---

[2]     The term "MTD" refers to Defendants' Motion to Dismiss Plaintiffs' Complaint.

[3]     These documents include a version of Con Ed's Retirement Plan with various amendments and computation tables (Reyes Aff. Ex. A1-A8, E); Retirement Documents (Reyes Aff. Ex. B, K); various excerpts from Con Ed's Collective Bargaining Contracts (Reyes Aff. Ex. C-D); 2003 Letter from the Internal Revenue Service (Reyes Aff. Ex. F); summary of the "100% Joint and Surviving Spouse Annuity Option/Level Income Option" for Plaintiffs Watson, Sheehan, McGlade and Avitabile (Reyes Aff. Ex. G-J); and the Acceptance and Release for Plaintiffs Watson, Sheehan and McGlade (Reyes Aff. Ex. L-N).

493, 496-97 (2d Cir. 2002).[4]  In fact, Defendants' own authority supports the exclusion of

Defendants' documents.  In *Faulkner*, while the court recognized that "a court may rely on

material extraneous to the complaint if the material was integral to the complaint and relied on by

the plaintiff in drafting the complaint,"[5] the Second Circuit was careful to limit its remarks to

only certain circumstances.  According to the court:

> However, before materials outside the record may become the basis for a
> dismissal, several conditions must be met.  For example, even if a document is
> "integral" to the complaint, it must be clear on the record that no dispute exists
> regarding the authenticity or accuracy of the document . . . .  It must also be clear
> that there exist no material disputed issues of fact regarding the relevance of the
> document.  The present record does not satisfy these conditions.  *Id.*

As in *Faulkner*, Defendants have not made and cannot make any showing that the submitted

documents were integral to Plaintiffs' Complaint or relied upon by Plaintiffs in drafting the

Complaint.  In fact, Defendants do not even suggest that the Plaintiffs have even seen the

majority of the 23 documents submitted.  Nor have they adequately authenticated the documents

or proven their accuracy.  Moreover, whether or not those documents demonstrate whether the

Plaintiffs suffered an injury is certainly an issue of fact that is in dispute.  As such, there is

absolutely no basis for this Court to consider these documents and they should be excluded from

Defendants' motion.

---

[4]    Unlike the present case, in which this Court clearly has subject-matter jurisdiction
under ERISA and Plaintiffs have clearly pled that they have been injured as a result of
Defendants' wrongful conduct, in *Luckett* it was highly uncertain as to whether the Court had
jurisdiction to hear plaintiffs' case or whether the matter was within the exclusive jurisdiction of
the military.  As such, the court held that to help it "resolv[e] the question of jurisdiction the
district court can refer to evidence outside the pleadings . . . ."  *Luckett*, 290 F.3d at 496-97.  No
such uncertainty or confusion exists here.

[5]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), citing *Global Network
Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006).

Similarly, Defendants seek dismissal of Plaintiffs' Complaint based on a litany of factual assertions. These factual assertions, which Defendants ask this Court to accept as true, fall far outside the four corners of the Complaint and should also be excluded.[6] See *United States of America v. Yonkers Branch-National Association for the Advancement of Colored People*, 893 F.2d 498, 502 (2d Cir. 1990) ("the court reiterated that their motion to dismiss had raised factual questions that might be resolvable on summary judgment but that could not be resolved solely by reference to the pleadings"); *Envirosource, Inc. v. Horsehead Resource Development Co., Inc.*, 1996 U.S. Dist. LEXIS 9099, at *42 n. 11 (S.D.N.Y. July 1, 1996) ("The Court finds that the recent events alleged by HRD involve questions of fact, not law, and are not the proper subject of a *Rule 12(b)(6)* motion.").

### 3.    Plaintiffs Have Adequately Pled Standing Under ERISA And Article III

#### a.    Plaintiffs Need Not Allege An Injury-In-Fact With Respect To Their Breach Of Fiduciary Duty Claims

Defendants argue that Plaintiffs' claims should be dismissed because they have failed to allege injury that can be redressed by the litigation. More specifically, "[b]ecause the benefit received under the Level Income Option is equivalent in actuarial value to the other benefit options available to them, Plaintiffs have suffered no injury by electing the Level Income Option. They certainly have suffered no injury for which ERISA affords monetary relief." MTD at 3. As discussed above, whether or not the Plaintiffs actually received their actuarial equivalent, as it relates to the Level Income Option, is a factual matter which is in dispute and certainly can not be resolved at this stage of the litigation or on a motion to dismiss. More specifically, it will no doubt become a subject of expert testimony to determine whether the Plaintiffs, who elected the Level Income Option, received their actuarial equivalent, and even if they did, whether being solicited to select an option based on material misrepresentations and omissions itself constitutes

---

[6]    See, e.g., Exhibit A attached hereto.

8

an injury.[7] If the only relevant consideration is actuarial equivalency, it begs the question why do

the Defendants trouble themselves to offer employees a choice of options and burden the

employees with having to choose which option is best suited for them? Unless, of course, the

options are illusory, which Con Ed has not argued.

In any event, to the extent the Court considers Defendants' factual assertions, Defendants'

argument provides no basis for dismissal.

First, it is well settled that with regards to Plaintiffs' breach of fiduciary duty claims,

Plaintiffs need not allege an actual injury under Article III. As this Court recently held:

> While "[t]he case law does not create an exception to the traditional injury
> requirement in contractual ERISA claims for benefits, . . . it does in fiduciary duty
> ERISA claims for prospective relief." *Weiss*, 972 F. Supp. at 755 n.7. The
> Second Circuit has adopted a "broad view of participant standing under ERISA,"
> holding that a violation of ERISA § 404 satisfies Article III's injury requirement.
> *Financial Inst. Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149
> (2d Cir. 1992). *See also Central States Southeast and Southwest Areas Health
> and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d
> Cir. 2005). Under the law of this circuit, therefore, an ERISA plaintiff is not
> required to "demonstrate actual harm in order to have standing to seek *injunctive
> relief* requiring [a defendant to] satisfy its statutorily-created disclosure or
> fiduciary responsibilities." *Id.* at 199. (emphasis in original).

> To the extent that the Exemplar Claims seek injunctive relief for breach of
> fiduciary duty, Plaintiffs Finley, Ericson, and Marcum have presented an issue of
> material fact as to the injury requirement despite their inability to show out-of-
> pocket loss and therefore have standing to proceed in those claims.

*The American Medical Ass'n v. United Healthcare Corp.*, 2007 U.S. Dist. LEXIS 44196, at *

62-63 (S.D.N.Y. June 18, 2007). In fact, Defendants' own papers, albeit a footnote,

acknowledge that the "Second Circuit will not require a showing of actual harm for a claim

seeking to enjoin a plan or its fiduciaries to comply with their disclosure obligations." MTD at

---

[7]     At the appropriate time, Plaintiffs intend to offer expert testimony regarding the
adequacy of Defendants' disclosures regarding the Level Income Option as well as the
appropriateness and reasonableness of the assumptions utilized by Defendants in determining the
ultimate amounts deducted from retirees' pensions who elected the Level Income Option.

14 n. 11.[8]  Defendants nevertheless contend that Plaintiffs are not entitled to this "limited

qualification" because Plaintiffs are demanding "increased pension payments" and not an

"injunction to comply with disclosure requirements." *Id.*  Defendants are completely wrong.

Contrary to Defendants' misstatements, the wealth of Plaintiffs' allegations regard Defendants'

fiduciary breaches, including their failure to speak truthfully and not mislead Con Ed retirees

regarding the plan and Level Income Option.  As a result of Defendants' breaches, Plaintiffs have

clearly sought injunctive relief to enjoin the wrongful aspects of the Level Income Option.  For

example, Plaintiffs seek to have the loans provided for by the Level Income Option declared

usurious and void; ordering Defendants to take all necessary steps to make Level Income Option

fully compliant with the law; prohibiting or enjoining Defendants from collecting any interest

payments or any payments made by retirees after their loan is paid in full; and awarding

extraordinary, equitable, and/or injunctive relief permitted by law, equity and the federal

statutory provisions sued thereunder, including attaching, impounding or imposing a constructive

trust or otherwise restricting the proceeds of Defendants' ill-gotten funds.[9]

---

[8]      In *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003),
a case relied upon by Defendants, the court recognized the critical importance of ERISA when it
concerns the disclosure of truthful and accurate information to plan participants.  According to
the court:

> As noted in *Gillis*, this conclusion is further supported "by the Supreme Court's
> statement that 'Congress' purpose in enacting the ERISA disclosure provisions
> [was to] ensur[e] that the individual participant knows exactly where he stands
> with respect to the plan.'" 4 F.3d at 1148 (quoting *Firestone Tire & Rubber Co. v.
> Bruch*, 489 U.S. 101, 118, 109 S. Ct. 948, 958, 103 L. Ed. 2d 80 (1989)).

*Id.* at 456.  The Third Circuit further recognized that "to restore to the plaintiff particular funds or
property in the defendant's possession" is an equitable remedy.  *Horvath*, 333 F.3d at 457.

[9]      It is important to note that because the plan is a defined benefits plan, any
amounts not distributed to Con Ed retirees inures to the benefit of Con Ed and not the plan.
Thus, the less Con Ed has to distribute, the more money Con Ed saves.  MTD at 4.

Thus, even a cursory reading of Plaintiffs' Complaint makes it clear that, through this Action, Plaintiffs seek equitable relief as a result of Defendants' ERISA violations.  Complaint ¶¶ 37, 38, 41, 42, 45, 49.

### b.    Plaintiffs Have Also Alleged An Injury-In-Fact To Satisfy Article III

Defendants further challenge Plaintiffs' complaint by arguing that Plaintiffs lack Article III standing because they have failed to allege an injury-in-fact.  MTD at 14.  Defendants' argument is both legally and factually incorrect.[10]

While "[s]tanding is the threshold question in every federal case," the Second Circuit has held that pleading an "[i]njury in fact is a low threshold, which we have held need not be capable of sustaining a valid cause of action, but may simply be the fear or anxiety of future harm." *Lily v. Oneida, Ltd. Employee Benefits Administrative Committee*, 2008 U.S. Dist. LEXIS 37838, at *14 (N.D.N.Y. May 8, 2008), quoting *Ross v. Bank of America, N.A. (U.S.A.)*, 2008 U.S. App. LEXIS 8927, 2008 WL 1836640, at *2 (2d. Cir. 2008).  The Second Circuit further held that, "[m]oreover, the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *Id.* at 14-15.  Based on these principles of law, the court in *Oneida* rejected defendants' challenges that plaintiffs lacked standing and denied their motion to dismiss.  As stated by the court:

> Section 409 of ERISA (29 U.S.C. § 1109), in turn, provides, *inter alia*, that a plan fiduciary who breaches any of the responsibilities, obligations, or duties imposed

---

[10]    Defendants' reliance on *Central States Southeast and Southwest Areas and Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181 (2d Cir. 2005) and *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003), is misplaced.  In neither *Central States* nor *Horvath* did plaintiffs allege that they were either financially or personally impacted by defendants' alleged fiduciary breaches.  More specifically, in *Central States*, plaintiffs, who sued derivatively on behalf of the plan, never alleged that they personally suffered an injury as a result of defendants' drug-switching programs.  Similarly, in *Horvath*, plaintiff never alleged that her level of care was affected or that she overpaid for healthcare.  To the contrary, Plaintiffs here have alleged that they have suffered and will continue to suffer extensive losses with respect to their pension benefits as a result of Defendants' fiduciary breaches.

11

upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. ERISA § 409(a), 29 U.S.C. § 1109(a)." *Id.* (internal quotations omitted). The court finds that at this stage of the litigation, and for the purpose of this motion, plaintiffs have adequately pleaded that their claims are redressable.

A thorough review of the Plan documents for the purpose of this motion makes it clear to this court that a retiring Oneida employee had the right to elect to receive his ESOP allocation as a lump sum of cash or shares. Upon the cancellation of all existing Oneida stock on September 15, 2006, discussed supra, plaintiffs argue and the court concurs that the ESOP was effectively rendered worthless. Plaintiffs argue that the loss of the value of employees' ESOP accounts means that the only remaining viable choice for the participants upon retirement is the monthly benefit they may receive from the PBGC. Doc. No. 95 at 3. Mindful that its duty is merely to assess the legal feasibility of the complaint, and not to assay the weight of the evidence, the court finds that plaintiffs have adequately pleaded an injury in fact, and one that can be redressed by a ruling in their favor under ERISA.

*Id.* at *19-20

As in *Oneida*, Plaintiffs have clearly alleged an actual and/or threatened loss as a result of Defendants' fiduciary breaches. As alleged in the Complaint, Plaintiffs reached a point in their careers at Con Ed that entitled them to take early retirement. In connection with their decision-making process, the Plaintiffs and other retirees were fraudulently induced, as a result of Defendants' fiduciary breaches, to elect Con Ed's Level Income Option program. As a result of this election, Plaintiffs discovered that instead of only having their pensions reduced by the amount advanced to them, their pensions would be reduced for the remainder of their lives. As such, Plaintiffs will lose tens, if not hundreds, of thousands of dollars as a result of the Level Income Option. It was deceptive and harmful for Defendants to offer so-called options to Plaintiffs and the Class without disclosing all of the material information regarding the options they were to consider. While it is uncertain how long Con Ed retirees who elected the Level Income Option will live, the amounts that they would have received in pension benefits had they not elected the Level Income Option, and the amounts that their pensions will be reduced as a result of electing the Level Income Option should they live to 70, 75, 85 and so on, is not

12

uncertain.[11] As such, it is indisputable that the Plaintiffs have an actual or threatened loss as a result of Defendants' breaches.

Defendants also devote an extensive amount of their motion to arguing that Plaintiffs have no injury-in-fact because "the benefit received under the Level Income Option is equivalent in actuarial value to the other benefit options available to them, Plaintiffs have suffered no injury by electing the Level Income Option. They certainly have suffered no injury for which ERISA affords monetary relief." MTD at 3. See also, MTD at 1-3, 5-11, 13-17. Irrespective of Defendants' conclusory, improper and self-serving remarks, there is absolutely nothing in the record to support Defendants' argument. The mere fact that Defendants claim that the Plaintiffs have received their actuarial equivalent, does not negate Plaintiffs' allegations that they were given an option, that before electing the option the Defendants made false and misleading misrepresentations and omissions which were a material factor in their election, and that they stand to lose tens or hundreds of thousands of dollars as a result of electing the Level Income Option. While Defendants ask this Court to accept their assertions as true, they are certainly factual issues in dispute. Moreover, whether or not Defendants utilized the proper assumptions (i.e. interest rates; mortality rates; how long they expect early retirees to live) in determining the advancement and deductions through the Level Income Option is certainly a complex factual issue that will be the subject of discovery and intense expert scrutiny and cannot be resolved on a 12(b)(6) motion.

---

[11]     Defendants seek to convince this Court that Plaintiffs' injuries are far too speculative because they only retired a few years ago and it won't be for a number of years (i.e. when they turn 75) before they establish a loss. MTD at 17. This is simply not true. Plaintiffs have specifically pled exactly how much Plaintiffs will lose when they reach certain ages of their lives. Even Defendants do not suggest that Con Ed believes that, based on mortality rates, retirees who elected the Level Income Option will pass away prior to paying back significantly more than what was advanced to them. However, Defendants do suggest that it is possible that "Plaintiffs will come out ahead, in that they could die before the so-called 'loan' is fully repaid." MTD at 17. Defendants' callous remarks are absurd and are not worthy of a response.

13

Additionally, Defendants' attempt to offer the Collective Bargaining Contracts and an IRS letter does nothing to bolster their argument. As for the Collective Bargaining Contracts, there is absolutely nothing in the record to suggest that this material is integral to the Complaint or was relied on by Plaintiffs in drafting their Complaint. Moreover, there is absolutely nothing in the record to support the appropriateness of the assumptions used in the Collective Bargaining Contract at the time Plaintiffs retired or that Plaintiffs could even remotely appreciate the significance of the assumptions identified in those documents.[12]

Similarly, Defendants seek to offer a 2003 IRS letter giving a favorable determination letter to the plan. Not only does this letter represent an impermissible submission to the Court, but the letter makes absolutely no reference to the retirement plan in which the Plaintiffs participated. Defendants themselves acknowledge that the Level Income Option was adopted in 1996, 7 years prior to the IRS letter, and that Plaintiffs Watson, Sheehan and McGlade "retired and commenced receiving their pension effective January 1, 2000." MTD at 9. In addition, there is absolutely no reference in the IRS letter regarding the Level Income Option, the adequacy of Defendants' disclosures, or the appropriateness of the assumptions used by Con Ed in calculating Plaintiffs' retirement benefits. Simply put, the fact that the IRS gave Con Ed a favorable determination letter in 2003 does nothing to alleviate Defendants' fiduciary obligations under ERISA or shield them from liability as a result of their fiduciary breaches.

---

[12]    While the Level Benefit Analysis used by Defendants is no doubt highly complicated, the disclosure in the Collective Bargaining Contract that Defendants rely upon simply says:

> Under the level income option employees will receive the actuarial equivalent of their pension-receiving a higher pension amount from the date of their retirement through, at the employee's election, age 62 or age 65 and a reduced pension thereafter. The actuarial equivalent is based on an interest rate of 7.5% and the 1983 GAM unisex (50% male, 50% female) mortality table. Reyes Aff. Ex. C-D.

### c.    Plaintiffs Have Alleged A Redressable Injury

Furthermore, Defendants' argument that Plaintiffs lack standing because Plaintiffs are unable to demonstrate that their injury is redressable is also without merit. MTD at 17. According to Defendants, because the relief demanded "purports to be injunctive in nature (*see, e.g.*, Prayers for Relief ¶¶ d, g), that relief is aimed at increasing Plaintiffs' pension benefits – beyond what they are entitled to under the actual terms of the Plan," the Plaintiffs are actually seeking to recover monetary damages which are unavailable under ERISA. MTD at 19. Defendants' arguments are again baseless and should be rejected.

The mere fact that Plaintiffs might receive money from the pursuit of their ERISA claims does not render the award compensatory monetary damages. In *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004), the defendant similarly argued that "relief, labled 'equitable' by the district court, is in substance nothing more than an order to pay money damages, and thus outside the ambit of Section 502(a)(3)." Relying, in part on the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 495 (1996), the Ninth Circuit rejected defendant's argument, stating:

> On its face, an order to modify plan records is not an award of monetary damages. More importantly, the relief granted by the district court here is also equitable in substance. To instate the plaintiffs retroactively into SITE simply puts them in the position they would have been had Chevron not breached its fiduciary duty: as employees who "self-tapped" and indicated a willingness to be involuntarily terminated to receive the SITE benefit. Although in this instance the district court's remedy will result in Chevron paying plaintiffs "sums of money" equivalent to the SITE benefits they lost because of Chevron's breach, the mere payment of money does not necessarily render the award compensatory "monetary damages."

*Matthews*, 362 F.3d at 1186. As in *Matthews*, Plaintiffs are seeking equitable relief as a result of Defendants' ERISA violations. See Complaint at page 17 (Prayers for Relief).

The fact that Plaintiffs' claims might require (i) the payment of money to retirees who have overpaid as a result of Defendants' ERISA violations, (ii) Con Ed to forego receiving

15

additional payments from retirees, or (iii) aspects of the Level Income Option being rescinded, thereby reinstating retirees to their position prior to electing the Level Income Option, does not transform Plaintiffs' claims for equitable relief into claims for monetary damages. As such, Plaintiffs' claims are clearly redressable and do not provide any basis for dismissing the Complaint.

Additionally, whether Defendants have received ill-gotten gains as a result of their ERISA violations is an issue of fact which can not be addressed at this stage of the litigation. However, even Defendants admit that the reduced payments as the result of the Level Income Options inures to the benefit of Con Ed. Thus, to the extent that those benefits were achieved by violations of ERISA, attaching, impounding, disgorgement and the creation of a constructive trust would all be proper equitable remedies. In addition, Plaintiffs' claims would also be redressed by forcing Defendants to comply with their fiduciary obligations, including the disclosure of truthful and accurate information regarding the Level Income Option and/or the complete or partial recision of the Level Income Option.

All of these remedies, including other equitable remedies mentioned in Plaintiffs' complaint are appropriate remedies that can redress the injuries suffered by Plaintiffs and the Class as a result of Defendants' ERISA violations.

**4.      Plaintiffs' State Law Claims Are Not Preempted By ERISA**

Defendants argue that Plaintiffs' state law claims should be dismissed as being preempted by ERISA. Defendants are incorrect. "[I]n determining whether ERISA preempts a state-law cause of action, 'the queries are (a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law [claim]." *Engler v. Cendant Corp.*, 434 F. Supp. 2d 119, 130 (S.D.N.Y. 2006) quoting *Devlin v. Transportation Communications Intern. Union*, 173 F.3d 94, 101 (2d Cir. 1999).

While case law does support the preemption of State Law claims in an ERISA action, the claims alleged in the Complaint involve misconduct that is wholly independent from the retirement plan. In particular, Plaintiffs have alleged that they were fraudulently induced into taking early retirement and, in particular the leveling option, based on the false and deceptive oral statements of Defendants and their agents. More specifically, Plaintiffs were told, completely separate from the plan, that by electing the Level Income Option they would receive their estimated Social Security benefit from the time they retire until they turned either 62 or 66 (depending on which option they elected). Upon turning either 62 or 66, their pension would be reduced until they paid back the monies advanced to them by Con Ed. Had Plaintiffs been honestly informed that their pensions would be reduced for the rest of their lives as a result of their level option election, they would have either kept on working or taken early retirement without electing the Level Income Option. Thus, Plaintiffs' fraud claims do not seek additional benefits under the plan, but rather damages resulting from the fraudulent inducement of the Plaintiffs, by Defendants, to retire early and elect the Level Income Option.

As the Court held in *Engler*:

> The Plaintiff's amended complaint asserts claims against Cendant for fraudulent inducement, negligent misrepresentation, and breach of contract, all of which involve Engler's reliance on Cendant's representations when he changed employment from Cendant to IBM. Similar state law claims against former employers have been permitted where the Plaintiff is not seeking damages under an ERISA plan. [Citation omitted]

> These claims that the Plaintiff asserts appear to be independent of any ERISA plan. The allegations under these causes of action do not appear to seek benefits under the IBM plan, but rather, monetary damages for the representations Cendant made with regard an alleged agreement it had with IBM. The Plaintiff's state law claims do not fall within the civil enforcement remedy of ERISA because at the time the alleged torts occurred, Engler was not a "participant" of any such ERISA plan. [Citation omitted]

17

*Engler*, 434 F. Supp. 2d at 130-31.[13]

Furthermore, Plaintiffs' usury claims would not be preempted by ERISA.  Plaintiffs'

usury claims do not seek to recoup benefits under the plan, but rather damages under the New

York State General Obligation Law §5-501.  Moreover, there is no provision of ERISA that

provides for addressing this particular issue.  See *Martin v. Pate*, 749 F. Supp. 242, 244 (S.D.

Ala. 1990) ("Of course, generally speaking, federal substantive law, and not state law, governs a

claim for benefits under ERISA. . . .  However, this Court is unaware of any provision of ERISA

or federal decisional law addressing the specific issue under consideration.  Consequently, the

Court will look to state law in order to reach a resolution.").  In fact, even the cases cited by

Defendants support the same conclusion.  In *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 45

(1987), the Supreme Court specifically held that while state laws that "relate[] to . . . employee

benefit plan[s]" are preempted, "nothing in this subchapter shall be construed to exempt or

relieve any person from any law of any state which regulates insurance, banking, or securities . . .

(saving clause)."  As such, Plaintiffs' usury claims which are governed by New York State's

General Obligations Law, clearly relate to the regulation of banking and would thus not be

preempted by ERISA.

## 5.   Plaintiffs' Releases Provide No Basis For Dismissal Of Plaintiffs' Claims

According to the Defendants, three of the four Plaintiffs have released all claims against

the Defendants through the execution of a release when they elected to retire under the Voluntary

Retirement Incentive Support Organizations ("VRISO") Program.  MTD at 22-24.  First, as

---

[13]     *See also, Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989) (claim of
fraud in the inducement held not preempted), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1166, 107
L. Ed. 2d 1068 (1990); *HealthAmerica v. Menton*, 551 So. 2d 235 (Ala. 1989) (claim of fraud in
the inducement held not preempted), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1166, 107 L. Ed. 2d
1069 (1990); and *Miller v. Lay Trucking Co.*, 606 F. Supp. 1326, 1333 (N.D. Ind. 1985)
("alleged fraudulent activities by defendants [which] took place prior to any contract being
entered into . . . do not directly affect the regulation of the ERISA plan" and as such the state law
claims premised on such activity are not preempted).

acknowledged by Defendants, not all of the Con Ed early retirees signed a release. While the Defendants submitted the Releases of Plaintiffs Sheehan, Watson and McGlade, they failed to produce a release for Plaintiff Avitabile.

Furthermore, while the execution of the releases does nothing to extinguish Plaintiffs' claims (see below), this Court cannot properly consider them in evaluating Defendants' Motion to Dismiss. As the Court in *Engler*, 434 F. Supp. 2d at 127, held:

> The Court cannot consider the admissions or statements in the parties' memorandum of law as factual allegations at this stage of the case. *Henthorn v. Dep't of Navy*, 308, U.S. App. D.C. 36, 29 F.3d 682, 688 (D.C.Cir. 1994); *Shaw v. District of Columbia*, 2006 U.S. Dist. LEXIS 26904, No. 05-1284 (CKK), 2006 WL 1274765, at *3 (D.D.C. May 8, 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed.2d 773 (1996)). Confining its review to the facts alleged in the amended complaint and the exhibits attached, the Court finds no reference to any fact regarding whether or not Engler signed the general release in favor of IBM. Therefore, IBM's arguments for dismissing the complaint on this ground are premature.

Nevertheless, even if the Court was to consider the submitted releases, they provide absolutely no basis for dismissal of Plaintiffs' claims. While the release signed by certain retirees does state that (i) they have 45 days to make their decision, (ii) are advised to seek counsel, and (iii) have a few days to revoke their decision, the Con Ed releases were the product of the fiduciary breaches committed by Defendants, including Defendants' fraudulent inducement, misrepresentations, and failure to provide truthful and adequate information regarding the Level Income Option and as such should be set aside.[14]

---

[14]    The cases relied upon by Defendants are easily distinguished. In *Yablon v. Stroock & Stroock & Lavan Ret. Plan and Trust*, 2002 U.S. Dist. LEXIS 10528 (S.D.N.Y. June 12, 2002), the plaintiff never alleged that he was fraudulently induced into signing the release. Similarly, in *Linder v. BYK-Chemie USA, Inc.*, 2006 U.S. Dist LEXIS 13823 (D. Conn. March 10, 2006), the court pointed out that the plaintiff had both a high level educational and business sophistication and that the plaintiff was aware that the disputed issue was unresolved. *Id.* at *25-27. The court further noted that "Plaintiff, as a senior level executive with extensive business and employee benefits experience, negotiated the release terms." *Id.* at *28-29. No such facts exist in the present case. It is important to note that the *Linder* court held that *Yablon* may not be

The releases that the Defendants rely upon are carbon copies of the releases that were set aside by Judge Korman in *DePace v. Matsushita Electric Corp*, 257 F. Supp. 2d 543 (S.D.N.Y. 2003). As stated by Judge Korman, "The ultimate test is whether the waiver was *in fact* knowing and voluntary. See *Laniok,* 935 F.2d at 1368. As with any other contractual release, circumstances evincing fraudulent inducement, misrepresentation, mutual mistake, or duress would justify setting aside the release." *DePace,* 257 F. Supp. 2d at 556. In setting aside the releases, and rebutting Defendants' reliance on *Yablon*, the Court held that "taking all of the allegations in the complaint as true, Matsushita's fraudulent inducement renders the releases signed by plaintiffs unenforceable at this stage of the proceeding." *Id.* at 557. In the present case, Plaintiffs have alleged that they were fraudulently induced by Defendants into participating in Con Ed's early retirement program and electing the Level Income Option. This allegation must be accepted as true and clearly nullifies any argument that Plaintiffs' execution of a release warrants dismissal of Plaintiffs' claims at the pleading stage.

Additionally, courts have held that "ERISA itself prohibits parties from waiving claims for breaches of fiduciary duty". *Baker v. Kingsley*, 2007 U.S. Dist. LEXIS 39935, at *12 (N.D. Ill. May 31, 2007). Holding that the releases did not bar the plaintiffs' action or make the plaintiffs inadequate, the Court relied on the specific language of ERISA: "any provision in an agreement or instrument which purports to relieve a fiduciary, from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *Id.*

Since the releases themselves are not properly part of the record; were procured by fraud, as well as Defendants' fiduciary breaches; not knowingly executed; and void as against public policy, they fail to provide any basis for dismissing this Action.

---

cited as precedential authority. *Id.* at *24 n. 12. Moreover, both *Yablon* and *Linder* recognize that "a beneficiary's waiver of a claim to benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *Linder*, 2006 U.S. Dist. LEXIS 13823, at *23; and *Yablon*, 2002 U.S. Dist. LEXIS 10528, at *13.

**6.      Plaintiffs' Claims Are Not Barred By The Statute Of Limitations**

Defendants contend that one of the grounds for dismissing three of the four Plaintiffs'

ERISA claims is that they are time barred by the Statute of Limitations.  MTD at 24.  Defendants

are again wrong.

ERISA § 413 provides:

No action may be commenced under this sub chapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of –

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

*Campanella v. Mason Tenders' District Council Pension Plan*, 299 F. Supp. 2d 274, 278-79

(S.D.N.Y. 2004).

According to the Con Ed Collective Bargaining Contract (1996-2000), Con Ed

implemented the Level Income Option in December 1996.  While the option was implemented in

1996, (i) those that had elected the Level Income Option several years ago have only recently

learned that the reduction of their benefits would run forever; (ii) for many class members the

pay back of the benefit has not even occurred yet; and (iii) Con Ed is still offering the Level

Income Option for employees in the process of retiring.   Thus, any which way the Statute of

Limitations is analyzed, Plaintiffs' claims are timely.  Plaintiffs' claims were certainly brought

within six years of Defendants' last breach (the continued reduction for life of Plaintiffs'

retirement benefits, which further violates NY's Usury laws).  In addition, Plaintiffs' breach of

fiduciary duty claims were also brought within three years of when Plaintiffs gained actual

knowledge of Defendants' fraudulent conduct. And, Plaintiffs' claims were brought within six years of when Plaintiffs gained actual knowledge of Defendants' fraudulent conduct. Moreover, Defendants continue to breach their fiduciary duties by their continued misrepresentations regarding the Level Income Option. In fact, while improperly submitted, Defendants' own documents demonstrate that Defendants continued to misrepresent and conceal from Plaintiffs and Class members the truth regarding the financial and operational impact of the Level Income Option.

Thus, because Plaintiffs' claims were timely filed and because Defendants continue to breach their fiduciary duties regarding the implementation of Con Ed's Level Income Option, the Statute of Limitations provides no basis to bar Plaintiffs' claims.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendants' motion to dismiss be rejected in its entirety.

Dated: New York, New York
      August 5, 2008

WEISS & LURIE

    *s/ Joseph H. Weiss*
Joseph H. Weiss (JW-4534)
James E. Tullman (JT-9597)
551 Fifth Avenue, Suite 1600
New York, NY 10176
(212) 682-3025

Lenard Leeds (LL-2255)
Matthew I. Marks (MM-5848)
LEEDS, MORELLI & BROWN, P.C.
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

Attorneys for Plaintiffs
and the Proposed Class

22

# EXHIBIT A

| MTD PAGE | DEFENDANTS' IMPROPER FACTUAL ASSERTIONS |
|---|---|
| 1. | "Their claim is based on a grossly simplistic conception that ignores the required role that actuarial assumptions play in funding pension plans and calculating pension benefits, and the fact that the Plan documents here require that all forms of payment options, including the Level Income Option, be actuarially equivalent to one another." |
| 1. - 2. | "Based on Collective Bargaining Agreements negotiated by Plaintiffs' unions in the 1990's, the Level Income Option was added to the Plan, and the Plan as so amended was subsequently approved by the Internal Revenue Service." |
| 2. | "To determine the actuarially equivalent benefit, the Plan's actuary applies two assumptions: a mortality assumption and an interest assumption, both of which are prescribed by the Collective Bargaining Agreements." |
| 3. | "Actuarial equivalence among the retirement options made available to participants can be determined only at the time of retirement and cannot thereafter be recalibrated based on individual experiences." |
| 3. | "Because the benefit received under the Level Income Option is equivalent in actuarial value to the other benefit options available to them, Plaintiffs have suffered no injury by electing the Level Income Option. They certainly have suffered no injury for which ERISA affords monetary relief." |
| 5. | "The Plan ordinarily calculates a participant's pension by multiplying the participant's 'Final Average Pay' by a percentage, or, if a higher amount would result, under an 'Alternative Formula' that applies to certain classes of participants." |
| 6. | "The adjustments are calculated such that the total amount of the monthly payments received from the Plan and Social Security throughout retirement remains level from the first month participants receive a check until the day they die." |
| 7. | "Hence, the Level Income Option creates a guaranteed total retirement income that stays level from the date of retirement until death." |
| 7. | "This optional form of payment is specifically contemplated by regulations issued by the Internal Revenue Service. . . ." |
| 7. - 8. | "Indeed, the Plan received a favorable determination letter from the IRS in 2003, which effectively endorsed the Plan's use of, and methodology for applying, the Level Income Option." |
| 7. | "Published sources confirm that a level income option is offered by a number of industry-wide pension funds, see, e.g., www.aftrahr.com/410.asp, as well as by collectively bargained pension plans of other IBEW locals, see e.g., www.ibew701fbo.com/level_income_option.htm." |
| 8. | "Most significantly for the issues raised by Plaintiffs, the union Collective Bargaining Agreements and the Plan require that the amount of the pension payments made under each of the pension options offered by the Plan be actuarially equivalent to the Normal Form of Benefit." |

1

| 8. | "For the Level Income Option, the requirement of actuarial equivalence, as well as the specific mortality and interest assumptions to be used to arrive at actuarially equivalent benefits, is specified in the Collective Bargaining Agreements with the Local Unions, pursuant to which: <br><br> Under the level income option employees will receive the actuarial equivalent of their pension-receiving a higher pension amount from the date of their retirement through, at the employee's election, age 62 or age 65 and a reduced pension thereafter. The actuarial equivalent is based on an interest rate of 7.5% and the 1983 GAM unisex (50% male, 50% female) mortality table." |
|---|---|
| 9. | "Whether the participant chooses to take the pension benefit in a steady stream of income or the Level Income Option is a personal choice." |
| 9. - 10. | "Persons such as these three Plaintiffs retiring under VRISO were eligible to receive various benefit enhancements, including, but not limited to: (i) a one-time special lump-sum early retirement incentive payment of up to 100% of their Final Average Salary; (ii) unreduced early retirement pensions for participants meeting certain age and service requirements; (iii) credited service and salary through December 31, 1999; and (iv) health and life insurance coverage at active employee levels through the end of 1999." |
| 11. | "Plaintiffs cannot identify where in the Plan it states that participant loans are permitted. Nor do they dispute that their pension payments under the Level Income Option were determined based on actuarial assumptions for interest and mortality prescribed by the Collective Bargaining Agreements." |
| 13. | "This means that the present value of the pensions they are receiving – calculated with the use of actuarial assumptions that were negotiated and agreed to by the Local Unions and included in the Collective Bargaining Agreements and the Plan – is equal to the present value of any of the other benefit options they could have elected instead." |
| 16. | "Because the Plan mandates that the Level Income Option Plaintiffs selected have the same actuarial value as the other benefit options available to them, Plaintiffs received a benefit that was equal in value to the benefit they might otherwise have elected." |
| 17. | "Indeed, because all the Plaintiffs are indisputably younger than their expected age of death in the mortality tables, the Plan has, thus far, paid Plaintiffs more than they would have received had they chosen the Normal Form of Benefit without Level Income Option." |
| 17. | "There is an equal likelihood that all of the Plaintiffs will come out ahead, in that they could die before the so-called 'loan' is fully repaid." |
| 21. | "For the reasons stated, the Level Income Option is not a participant loan, nor does it operate as a loan, and hence Plaintiffs' claim is really one for misrepresentation, rather than for receiving a usurious loan." |
| 23. | "Moreover, signing the releases enabled Plaintiffs to receive the substantially enhanced benefits offered under VRISO, which otherwise would not have been available to them." |

2