PROSKAUER ROSE LLP
Myron D. Rumeld
Deidre A. Grossman
1585 Broadway
New York, NY 10036
(212) 969-3021
(212) 969-3006

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
JAMES WATSON, JOSEPH AVITABILE, : 
THOMAS McGLADE, and ROBERT : 
SHEEHAN, Individually and On Behalf : 
of All Others Similarly Situated, : 
 : 
                      Plaintiffs, : 
 :   08 Civ. 4436 (JSR)
      -against- : 
 : 
CONSOLIDATED EDISON OF NEW YORK : 
and THE CONSOLIDATED EDISON : 
PENSION AND BENEFITS PLAN, : 
 : 
                      Defendants. : 
------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

I.    PLAINTIFFS HAVE FAILED TO SATISFY THE STANDING REQUIREMENTS OF ARTICLE III UNDER ERISA ............................................................................ 2

II.   PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY ERISA ......................... 6

III.  PLAINTIFFS WATSON, SHEEHAN AND MCGLADE HAVE NOT ALLEGED A BASIS TO VOID THE RELEASES THEY SIGNED ..................................................... 6

IV.  PLAINTIFFS HAVE PROVIDED NO BASIS FOR TOLLING ERISA'S STATUTE OF LIMITATIONS ............................................................................................................. 8

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                                                                    **PAGE(S)**

*Caputo v. Pfizer*,
    267 F.3d 181, 191 (2d Cir. 2001)..................................................................................8, 10

*DePace v. Matsushita*,
    257 F. Supp. 2d 543 (E.D.N.Y. 2003).................................................................................. 7

*Engler v. Cendant Corp.*,
    434 F. Supp. 2d 119, 131 (E.D.N.Y. 2006) ......................................................................... 6

*Faulkner v. Beer*,
    463 F.3d 130, 134-35 (2d Cir. 2006)................................................................................... 7

*Finz v. Schlesinger*,
    957 F.2d 78, 81 (2d Cir.), *cert. denied*, 506 U.S. 822 (1992)............................................... 7

*Hakim v. Chertoff*,
    447 F. Supp. 2d 325, 328 (S.D.N.Y. 2006)......................................................................3, 4

*Howell v. Motorola, Inc.*,
    No. 03 Civ. 5044 (RRP), 2005 WL 2420410, at *4-5 (N.D. Ill. Sept. 30, 2005).................... 7

*Impress Commc'ns v. Unumprovident Corp.*,
    335 F. Supp. 2d 1053, 1059-60 (C.D. Cal. 2003)................................................................ 2

*Kennedy v. Empire Blue Cross & Blue Shield*,
    989 F.2d 588, 594 (2d Cir. 1993)........................................................................................ 5

*Leavitt v. Northwestern Bell Tel. Co.*,
    921 F.2d 160, 161-62 (8th Cir. 1990).................................................................................. 7

*Lilly v. Oneida Ltd. Employee Benefits Admin. Comm.*,
    No. 07-CV-0340 (NPM), 2008 U.S. Dist LEXIS 37838, at *5-6 (N.D.N.Y. May 8,
    2008)................................................................................................................................3, 4

*Makarova v. United States*,
    201 F.3d 110, 113 (2d Cir. 2000)........................................................................................ 4

*Mathews v. Chevron Corp.*,
    362 F.3d 1172 (9th Cir. 2004) ............................................................................................. 2

*Oechsner v. Connell Ltd. P'ship*,
    283 F. Supp. 2d 926 (S.D.N.Y. 2003)
    *aff'd by summary order*, 101 F. App'x 849 (2d Cir. 2004).........................................8, 9, 10

*Olsen v. Pratt & Whitney Aircraft*,
    136 F.3d 273, 275 (2d Cir. 1998)......................................................................................... 9

*Taylor v. Peoples Natural Gas Co.*,
    49 F.3d 982, 988 (3d Cir. 1995)........................................................................................... 9

*Toussaint v. JJ Weiser & Co, Inc.*,
    No. 04 Civ. 2592 (MBM), 2005 WL 356834, at *10-11 (S.D.N.Y. Feb. 13, 2005) ..........8, 10

*Varity Corp. v. Howe*,
    516 U.S. 489, 512 (1996) .................................................................................................... 5


**STATUTES**

29 U.S.C. § 1113 ...............................................................................................................10

29 U.S.C. § 1132(a)(3) ......................................................................................................3, 5

29 U.S.C. § 1132(a)(1)(B) .................................................................................................5, 8


**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b)......................................................................................................8, 9, 10

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................................7, 8

**PRELIMINARY STATEMENT**

Plaintiffs fail to provide a legal or factual basis for resisting the arguments advanced in support of Defendants' motion to dismiss the Complaint in its entirety.

Regarding the injury-in-fact requirement of standing, Plaintiffs start by arguing that they need not show actual harm because they are seeking injunctive relief.  But having failed to distinguish the case law holding that their claim is for monetary relief not available under ERISA, they must show actual harm.  Their next argument is that they have non-speculative losses because, *if* they live long enough, the amounts they ultimately receive will be lower than if they had chosen the Normal Form of Benefit without leveling.  That argument fails for a number of reasons, including the fact that the Complaint is devoid of an allegation that any Plaintiff is anywhere near being retired long enough for that "if" to be anything but pure speculation. Another argument Plaintiffs make on this issue is that they have actual harm because they dispute whether their benefits under the Level Income Option are actuarially equivalent to the Plan's other benefit options.  But their Complaint does not dispute actuarial equivalence and, if it did, the Complaint would have to be dismissed for failure to exhaust their administrative remedies.  Since there is no injury-in-fact, the Complaint should be dismissed in its entirety.

Moreover, Plaintiffs cannot establish the redressability requirement of standing.  The relief they seek – an adjustment to their benefit not provided by the Plan – is for monetary relief not available under ERISA.  Courts have routinely rejected back-door attempts such as Plaintiffs' to characterize requests for money damages as equitable claims redressable under ERISA. Without a redressable injury under ERISA, the Complaint should be dismissed in its entirety.

Plaintiffs have similarly failed to provide a legal or factual basis for resisting the arguments for dismissing their state law claims and the claims of three of the named Plaintiffs.

# POINT I
# PLAINTIFFS HAVE FAILED TO SATISFY THE
# STANDING REQUIREMENTS OF ARTICLE III UNDER ERISA

Plaintiffs offer various explanations why they have met their burden of satisfying Article III's injury-in-fact and redressability requirements. None are legally or factually sustainable.

**First**, Plaintiffs contend that they need not demonstrate actual economic harm to satisfy the injury-in-fact requirement because they have asserted a claim for injunctive relief. (Pl. Br. at 9-10). They admit, however, that a claim for injunctive relief would be one seeking *prospective* enforcement of ERISA's requirements (*i.e.*, to compel statutorily-prescribed disclosure obligations). (*Id.*). Plaintiffs' Prayers for Relief contain no such demand.[1] Instead, Plaintiffs seek, *inter alia*, an order, "prohibiting or enjoining Defendants from collecting any . . . payments made by retirees after their loan is paid in full" (*i.e.*, from continuing reductions). (Prayers for Relief ¶¶ d, g; Pl. Br. at 10). This is not a request for injunctive relief; it is a back-door demand for benefits not otherwise available to Plaintiffs under the terms of the Plan.

Plaintiffs have made no effort to distinguish the numerous cases demonstrating that their claims are for damages only. (*See* Def. Br. at 14, 18). Instead, they cite a single case, *Mathews v. Chevron Corp.*, 362 F.3d 1172 (9th Cir. 2004), but that case is clearly distinguishable. The court in *Mathews* enabled plaintiffs to recover plan benefits they had foregone as a result of defendants' misrepresentations by issuing an order that returned plaintiffs to the position they would have been in but for the misrepresentations. Here, by demanding that the Plan discontinue post-Social Security age benefit reductions, Plaintiffs are seeking monetary relief to which they

---

[1] Even if Plaintiffs had made a demand to compel compliance with ERISA's disclosure requirements, they would have no standing to pursue it since, having retired, they would not benefit from future disclosures. *See*, *e.g.*, *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1059-60 (C.D. Cal. 2003) (participants who no longer held insurance policies lacked standing to compel future compliance with ERISA's disclosure requirements regarding claims processing practices).

2

were never entitled in the first place. Since the relief is not injunctive, it does not cure Plaintiffs' failure to satisfy the injury-in-fact requirement. It also does not satisfy the requirement that Plaintiffs assert a claim that is redressable under ERISA § 502(a)(3). (*See* Def. Br. at 17-19).

**Second**, Plaintiffs contend that they have made a showing of actual harm. They claim that they "will lose tens, if not hundreds, of thousands of dollars as a result of the Level Income Option." (Pl. Br. at 12). There is no such harm, since the Level Income Option benefit Plaintiffs received is actuarially equivalent to the other benefits available. The Complaint does not allege otherwise. Plaintiffs' alleged harm is, in any event, speculative. The Complaint does not allege that any named Plaintiff is anywhere near the age at which his benefit reductions after reaching Social Security age exceed the increase in benefits received before Social Security age. (*See* Def. Br. at 16-18). It is pure speculation that any of the Plaintiffs will live that long. The Complaint, instead, consistently refers to hypothetical retirees who might live to such ages (*i.e.*, beyond their statistical probability). (Compl. ¶¶ 31-32). *See also Hakim v. Chertoff*, 447 F. Supp. 2d 325, 328 (S.D.N.Y. 2006) (where plaintiff's professional certification would not expire for four years, any alleged interference with his ability to re-certify was "'too remote temporally to satisfy Article III['s] standing [requirements]'") (citation and quotation omitted).

Plaintiffs have cited no authority holding that the mistaken selection of a benefit option that is actuarially equivalent to other available benefit options is a form of harm that satisfies Article III's requirements under ERISA. The only case they cite, *Lilly v. Oneida Ltd. Employee Benefits Admin. Comm.*, No. 07-CV-0340 (NPM), 2008 U.S. Dist LEXIS 37838 (N.D.N.Y. May 8, 2008), is inapposite. In *Lilly*, participants of an Employee Stock Option Plan ("ESOP") alleged that plan administrators breached their fiduciary duties by continuing the ESOP's employer stock investments, which became worthless when the employer filed for bankruptcy.

3

While their benefits were insured by the Pension Benefit Guarantee Corporation ("PBGC") – which afforded them an annuity – they nevertheless could no longer receive the lump sum benefit to which they would otherwise have been entitled under the ESOP. In that context, the district court rejected the argument that plaintiffs lacked standing.

The *Lilly* case is distinguishable for a number of reasons. First, the court did not say that the monthly pension paid by the PBGC and the lump sum were actuarially equivalent. Second, plaintiffs asserted that the reason their inability to take a lump sum was an injury-in-fact was because they could have invested the lump sum at more favorable market rates than provided for under the plan and/or used the lump sum to meet pressing financial needs, whereas a monthly annuity would provide neither of those benefits. *Id.* at *5-6. Here, Plaintiffs are in a completely different position; they received more money up-front, not less, by opting for the Level Income Option. Lastly, no forms of benefits offered by the Plan have been taken away from Plaintiffs.

**Third**, Plaintiffs contend that the standing defense is supported by documents that cannot be introduced on a motion to dismiss.[2] It is well-settled, however, that, where subject matter jurisdiction is challenged, the Court is free to consider materials extrinsic to the complaint. *Hakim*, 447 F. Supp. 2d at 326, n.2 (*citing Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)). Furthermore, the only factual statement supporting the standing defense – that Plaintiffs' Level Income Option benefits are actuarially equivalent to the other benefit options – is based on the Plan (*see* Reyes Aff., Exs. A-E) and is not challenged in the Complaint.[3] If Plaintiffs wish to

---

[2] To the extent this same argument is asserted with respect to the other defenses, it is addressed *infra* at 7, n.4 and 8, n.5.

[3] Plaintiffs also at one point suggest that, even if the Level Income Option were actuarially equivalent to the other benefit options, there would be a factual issue as to whether they were harmed merely by virtue of having allegedly been misled about the Level Income Option. (*See* Pl. Br. at 8). But they make no allegation of what that harm would be, let alone whether that harm is redressable under ERISA. (*See* Def. Br. at 18).

4

mount such a challenge, they must amend their Complaint to assert a claim for Plan benefits under ERISA § 502(a)(1)(B), since the Plan document and underlying Collective Bargaining Agreements mandate that the Level Income Option benefit be actuarially equivalent to the Normal Form of Benefit.  *See*, *e.g.*, 29 U.S.C. § 1132(a)(1)(B) (providing vehicle for participant "to recover benefits due to him under the terms of his plan [and to] enforce his rights under the terms of his plan"); *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (challenges to payment of benefit claims arise under ERISA § 502(a)(1)(B), not ERISA § 502(a)(3)).  As previously noted (*see* Def. Br. at 11, n.10), such a claim would be subject to the requirement that participants exhaust the Plan's administrative remedies before proceeding to court.  *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993).

      Requiring Plaintiffs to exhaust their claim would be in keeping with the policies underlying the exhaustion requirement; namely, to afford the opportunity for the plan administrator to build an administrative record and thereby simplify or eliminate the litigation process.  *Id*.  There is no apparent basis for Plaintiffs' assertion that the benefits they received under the Level Income Option were not actuarially equivalent to the other benefit options.  The Plan documents prescribe the precise method for establishing actuarial equivalence, and that method was negotiated in collective bargaining.  (*See* Def. Br. at 8).  If Plaintiffs nevertheless believe they can in good faith articulate a basis to contend that their Level Income benefits were not actuarially equivalent, they should be required to submit their arguments to the Plan, and thereby afford the Plan Administrator the opportunity to prepare a response.  That response can later be presented for review by a district court, under the standard of review prescribed by ERISA, if Plaintiffs still believe they have a basis for a claim.  To proceed with such a claim before the development of an administrative record would needlessly consume judicial resources.

## POINT II
## PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY ERISA

Defendants cited controlling United States Supreme Court and Second Circuit authorities for finding that Plaintiffs' state law claims for breach of fiduciary duty and fraud in the inducement are preempted because they (1) "relate to" the Plan and Plan administration; and (2) are wholly duplicative of claims Plaintiffs have advanced under ERISA in their First and Second Claims for Relief. (Def. Br. at 20-21). Plaintiffs ignore these authorities and instead cite decisions (all but one from outside the Second Circuit) holding that non-plan participants can bring state law claims to challenge misrepresentations made prior to their participation in an ERISA plan. *See*, *e.g., Engler v. Cendant Corp.*, 434 F. Supp. 2d 119, 131 (E.D.N.Y. 2006) (discussed in Pl. Br. at 17). These cases are not only trumped by the authorities cited by Defendants, but are inapposite because Plaintiffs' state law claims – like their ERISA claims – (1) are brought by Plan participants (Compl. ¶ 5); and (2) challenge communications about Plan benefits (Compl. ¶ 52). As such, they fall squarely within ERISA's preemptive sweep.

Plaintiffs contend that their usury claims are not preempted because (1) "there is no provision of ERISA that provides for addressing this particular issue[,]" and (2) banking laws are exempt from ERISA § 514. (Pl. Br. at 18). They are incorrect for reasons previously stated and not refuted. Plaintiffs make no effort to distinguish the case law Defendants have cited on these points which require that this claim also be dismissed as preempted. (Def. Br. at 22).

## POINT III
## PLAINTIFFS WATSON, SHEEHAN AND MCGLADE
## HAVE NOT ALLEGED A BASIS TO VOID THE RELEASES THEY SIGNED

Plaintiffs do not dispute that courts in this Circuit routinely dismiss ERISA claims based on release language that is identical to the language in the releases signed by three of the Plaintiffs. (Pl. Br. at 18-20). They contend that the releases should be set aside because they (1)

6

were procured through Defendants' misrepresentations about the Level Income Option; and (2) do not apply to claims for breach of fiduciary duty. (*Id.*).

The first argument mistakenly relies on *DePace v. Matsushita*, 257 F. Supp. 2d 543 (E.D.N.Y. 2003). In *DePace*, the court set aside releases that plaintiffs signed in order to participate in a voluntary resignation program, upon finding that defendants induced plaintiffs to participate in the program and sign the releases by furnishing them grossly inflated estimates of what their pension benefits would be if they retired early. Here, Plaintiffs cannot contend that they signed the releases because of what they were told about their Level Income Option benefits, since they elected the Level Income Option after they signed the releases. (*Compare* Reyes Aff., Exs. L-N with Exs. G-I).[4]

Plaintiffs' second argument, that fiduciary breach claims cannot be released, ignores authority to the contrary. *See*, *e.g.*, *Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 161-62 (8th Cir. 1990); *Howell v. Motorola, Inc.*, No. 03 Civ. 5044 (RRP), 2005 WL 2420410, at *4-5 (N.D. Ill. Sept. 30, 2005) (collecting cases). In *Leavitt*, a case cited approvingly by the Second Circuit, *see Finz v. Schlesinger*, 957 F.2d 78, 81 (2d Cir.), *cert. denied*, 506 U.S. 822 (1992), the court determined that, while ERISA prohibits agreements to relieve fiduciaries of their statutory obligations, a release "does not relieve a fiduciary of any responsibility; . . . instead, it merely settles a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion." 921 F.2d at 161-62. In light of these authorities, the one district court case cited by Plaintiffs for the contrary proposition – stated in *dicta* (Pl. Br. at 20) – should be disregarded.

---

[4] Plaintiffs contend that this Court may not consider the Acceptance and Release forms, which confirms this sequence of events. The forms fall within the category of documents a court may consider, however, because they are integral to the Complaint (which alleges at paragraphs 22-23 that an early retirement program was implemented and presented) and, having signed the releases as part of this early retirement program, Plaintiffs clearly had notice of their contents when they commenced this lawsuit. *See Faulkner v. Beer*, 463 F.3d 130, 134-35 (2d Cir. 2006).

7

In short, Plaintiffs Watson, Sheehan and McGlade offer no basis for disputing that their claims are barred by the releases they signed in return for early retirement enhancements.

## POINT IV
## PLAINTIFFS HAVE PROVIDED NO BASIS FOR TOLLING ERISA'S STATUTE OF LIMITATIONS

Plaintiffs do not address – let alone distinguish – the authorities demonstrating that the claims of Watson, Sheehan and McGlade are time-barred because they were brought more than six years after the alleged misrepresentations cited in the Complaint.[5]  Instead, they contend – without citation – that their claims are timely because: (1) some class members only recently learned that their payments would be permanently reduced; (2) others have not begun to pay back the amounts advanced; and (3) the Plan still offers the Level Income Option today.  (Pl. Br. at 21).  Although these arguments might be relevant if Plaintiffs were asserting a claim for benefits under ERISA § 502(a)(1)(B), they do not apply to a fiduciary breach claim alleging a misrepresentation, as the cases previously cited establish.  (*See* Def. Br. at 24).

Plaintiffs argue in the alternative that their cause of action did not accrue until the date they discovered Defendants' allegedly fraudulent conduct.  (Pl. Br. at 22).  Under ERISA § 413, the limitations period can be extended on grounds of fraud, but only if the plaintiff pleads a claim for common law fraud with the particularity required by Federal Rule 9(b).  *See Caputo v. Pfizer*, 267 F.3d 181, 191 (2d Cir. 2001); *Toussaint v. JJ Weiser & Co, Inc.*, No. 04 Civ. 2592 (MBM), 2005 WL 356834, at *11 (S.D.N.Y. Feb. 13, 2005); *Oechsner v. Connell Ltd. P'ship*, 283 F. Supp. 2d 926 (S.D.N.Y. 2003), *aff'd by summary order*, 101 F. App'x 849 (2d Cir. 2004).  Here,

---

[5] Contrary to Plaintiffs' assertions, this Court may consider the pension summaries for Plaintiffs Watson, Sheehan and McGlade establishing their dates of retirement under Federal Rule 12(b)(6) because they are integral to the Complaint, were signed by these Plaintiffs, and relied on by them for their argument that the Level Income Option works an injustice by requiring permanent reductions in participants' pension payments.  (*Compare* Reyes Aff., Exs. G, H and I *with* figures in Compl. ¶ 31).

8

Plaintiffs cannot meet these requirements since they concede that, in June 1999, they received a communication that once they commenced receiving Social Security benefits, their pension benefits would be decreased thereafter. (Compl. ¶ 22; Pl. Br. at 2). *See*, *e.g.*, *Oechsner*, 283 F. Supp. 2d at 934 (finding no fraudulent misrepresentation where plaintiffs were given communication stating that employer had no obligation to provide comparable benefits upon ESOP divestiture and were on notice that inconsistent promises of benefits could be abrogated).

Second, Plaintiffs fail to identify the names of the "individuals from Con Ed's benefits and compensation department" who allegedly made the statements that are alleged to have been fraudulent. (Compl. ¶ 23). This is fatal under Rule 9(b) and under ERISA, since only by knowing these individuals' identities and roles at Con Edison can it be determined whether these persons had authority to speak on behalf of the Plan and whether their representations can support a claim for breach of fiduciary duty. *See*, *e.g.*, *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998) (finding Rule 9(b) requirements not met, among other things, because plaintiff did not identify speakers or their positions indicating whether they had authority to bind company); *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 988 (3d Cir. 1995) (ERISA fiduciary liability is limited to persons with "apparent authority to provide such information and guidance to plan participants, on behalf of the plan administrator").

Third, Plaintiffs have not alleged any facts creating even an inference of fraudulent intent. The only allegation that hints at motivation appears in Plaintiffs' state law claim, where they state that "Defendants derived substantial benefits from the false promises, in that it would ultimately reduce Con Ed's retirement payments by millions of dollars." (Compl. ¶ 53). As explained above and in Defendants' opening brief, however, the Level Income Option is as costly as any other optional form of payment available to the Plan. Absent any evidence that

9

either the Plan or Con Edison stood to gain from retirees selecting the Level Income Option, Plaintiffs cannot plead the requisite fraudulent intent to state a claim for common law fraud. *See, e.g.*, *Oechsner*, 283 F. Supp. 2d at 933 (statement that breach was "motivated by management greed" held insufficient to trigger fraud or concealment exception) (*citing Caputo*, 267 F.3d at 191); *Toussaint*, 2005 WL 356834, at *10 (conclusory allegations of fraudulent intent held insufficient to elevate ERISA fiduciary breach claim to common law fraud).[6]

For any or all of these reasons, the "fraud or concealment" exception under ERISA § 413 is not available to Plaintiffs Watson, Sheehan and McGlade. Accordingly, their claims must be dismissed as untimely, since the last act constituting the breach could have been no later than January 1, 2000, well over six years before the commencement of this lawsuit.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, this Court should grant Defendants' motion and dismiss the Complaint in its entirety. Alternatively, it should dismiss the claims of Watson, Sheehan, and McGlade.

Dated: New York, New York  
      August 12, 2008

Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/ Myron D. Rumeld  
    Myron D. Rumeld  
    Deidre A. Grossman  
    1585 Broadway  
    New York, NY 10036  
    mrumeld@proskauer.com  
    dagrossman@proskauer.com  
    (212) 969-3021  
    (212) 969-3006  
    *Attorneys for Defendants*

---

[6] Because there is no set of facts whereby Plaintiffs could plead – let alone establish – fraudulent intent, it would be futile to allow Plaintiffs to amend their complaint to attempt to satisfy Rule 9(b)'s requirements.