UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
JAMES WATSON, JOSEPH AVITABILE,                :
THOMAS McGLADE, and ROBERT SHEEHAN,            :
                                               :        08 CV 4436 (JSR)
                Plaintiffs,                    :
                                               :           OPINION
          -v-                                  :
                                               :
CONSOLIDATED EDISON OF NEW YORK                :
and THE CONSOLIDATED EDISON                    :
PENSION AND BENEFITS PLAN,                     :
                                               :
                Defendants.                    :
---------------------------------------- x

JED S. RAKOFF, U.S.D.J.

        Plaintiffs James Watson, Joseph Avitabile, Thomas McGlade,

and Robert Sheehan bring suit, on behalf of themselves and all others

similarly situated, against defendants Consolidated Edison of New

York and the Consolidated Edison Pension and Benefits Plan, alleging,

in essence, that defendants fraudulently and in breach of their

fiduciary duties reduced plaintiffs' retirement benefits.  In their

Class Action Complaint ("Compl."), plaintiffs asserted seven causes

of action: (1) breach of fiduciary duty pursuant to ERISA § 404, 29

U.S.C. § 1104; (2) breach of fiduciary duty to keep beneficiaries

informed pursuant to ERISA § 404, 29 U.S.C. § 1104; (3) failure to

distribute summary plan description and misleading summary plan

description in violation of ERISA § 133, 29 U.S.C. § 1133; (4)

violation of disclosure rules for options with unequal values in

violation of 26 C.F.R. 1.401(a)-20; (5) fraudulent inducement; (6)

breach of fiduciary duty; and (7) usury.  However, defendants moved,

pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss Counts 1 through 4

for lack of subject matter jurisdiction, and, pursuant to Fed. R.

Civ. P. 12(b)(6), to dismiss Counts 5 through 7 for failure to state a claim upon which relief can be granted.  After reviewing the briefs and hearing oral argument, the Court, by Order dated September 12, 2008, granted defendants' motion in part and denied it in part.  This Opinion explains the reasons for that Order.

The allegations relevant to defendants' motion are as follows.[1]  The named plaintiffs are former employees of defendant Consolidated Edison of New York, and are participants in the Con Ed Pension and Benefits Plan ("the Plan"), a defined benefits plan administered by defendants.  Compl. ¶¶ 5, 8, 16.  In approximately June 1999, defendants began implementing an early retirement program for its employees, pursuant to which participants were eligible to choose from among a variety of retirement plans, including the Level Income Option.  Id. ¶¶ 22, 24.  Pursuant to the Level Income Option,

---

[1] Defendants submitted an affidavit and numerous exhibits in support of their motion to dismiss.  See Affidavit of Hector J. Reyes and accompanying exhibits ("Reyes Aff.").  When, as here, a court's "subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."  Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  Accordingly, the court has considered all of the materials submitted by defendants for purposes of defendants' motion to dismiss Counts 1 through 4, which was brought pursuant to Fed. R. Civ. P. 12(b)(1).  See Alliance for Environ. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 nn. 6, 8 (2d Cir. 2006).  For purposes of defendant's motion to dismiss Counts 5 through 7, however, which was brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court has considered only the allegations on the face of the Complaint, along with such documents as are incorporated by reference in the Complaint or necessarily relied upon by plaintiffs in bringing this action.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

participants retiring before they became eligible for Social Security benefits could elect to receive larger pension payments before Social Security benefits began and smaller pension payments thereafter. Reyes Aff. Ex. E at 6-8.  The adjustments were calculated so that the total amount of the monthly payments received from the plan and Social Security would remain level throughout retirement.  Id.

The Plan requires that payments made pursuant to the Level Income Option be the "actuarial equivalent" of pension payments that the retiree otherwise would have received.  Compl. ¶ 21; Reyes Aff. Ex. B at 59, 65.  In other words, the Plan mandates that "[t]he present value of the benefit payable under [the Level Income Option]" must "be equal to the present value of the Pension Allowance otherwise payable to the Participant," as determined by certain actuarial analyses.  Reyes Aff. Ex. A at 86.

In the course of implementing the Level Income Option, defendants held meetings and made presentations for prospective early retirees, including plaintiffs, to discuss available retirement options, including the Level Income Option.  Compl. ¶ 23.  These presentations, which were made in accordance with standardized training and plan description practices, described the Level Income Option as a "monthly loan program" that would facilitate early retirement by raising retirees' income until they became eligible for Social Security.  Id. ¶¶ 23, 25.  Prospective retirees were told that once Social Security benefits began, the loans would end and that the monthly pension checks would be reduced until the loans were paid

back.  Id. ¶ 26.  Plaintiffs allege that the presentations did not disclose, however, that retirees would have to pay "interest" on these "loans," or that early retirees' monthly pension benefits would be reduced for life, irrespective of how long they lived, when the "loan" was paid back, the amount of interest paid, or the amount in excess of the loan that was paid back.  Id. ¶ 27.

Each of the named plaintiffs in this action took early retirement, and elected to participate in the Level Income Option. Id. ¶¶ 5, 28.  Plaintiffs allege that they only learned the "truth" about the Level Income Action, that is, that they learned that their monthly pension benefits would be reduced for life regardless of whether or not they had repaid the balances on the loans, "well after choosing the Level Income Option, and long after the time to change or cancel their selection of the leveling option."  Id. ¶ 29.  As a result of plaintiffs' allegedly misinformed decisions, plaintiffs "will be required to pay, depending upon the length of their lives, tens, if not hundreds, of thousands of dollars above the amount actually borrowed."  Id. ¶ 34.

In the instant motion, defendants first argue that plaintiffs lack Article III standing to assert federal claims under ERISA, and that Counts 1 through 4 accordingly must be dismissed for lack of subject matter jurisdiction.  The Court is not persuaded.

Standing, "an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan v. Defenders of Wildlife, 504, U.S. 555, 560 (1992), consists of three elements: (1)

4

injury in fact, i.e., a concrete, particularized, actual or imminent injury; (2) causation, i.e., the injury is fairly traceable to the defendant's conduct; and (3) redressability, i.e., it is likely (as opposed to merely speculative) that plaintiff's injury can be redressed by a favorable decision.  Cent. States Southeast and Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, 433 F.3d 181, 198 (2d Cir. 2005).  Here, defendants argue that plaintiffs have failed to allege injury-in-fact, and that plaintiffs have not suffered any injury that is redressable under ERISA.  The Court considers each of these arguments in turn.

Although injury-in-fact is an "irreducible constitutional minimum," Connecticut v. Phys. Health Svc's of Conn., Inc., 287 F.3d 10, 116 (2d Cir. 2002), the Second Circuit takes a "broad view of participant standing under ERISA."  Fin. Inst. Retirement Fund v. Office of Thrift Supervision, 964 F.2d 142, 149 (2d Cir. 1992).  Thus, to the extent that plaintiffs seek "injunctive relief related to ERISA's disclosure and fiduciary duty requirements," they need not make "a showing of individual harm" as to any plaintiff.  Cent. States, 433 F.3d at 199.

On its face, the Complaint recounts numerous alleged fiduciary breaches, including (1) defendants' failure to disclose that "unlimited interest would be assessed" on the "loans" in question and that plaintiffs "would continue to pay Defendants well after paying back their loans," Compl. ¶ 37; (2) defendants' failure to provide accurate information about the Pension Plan and the Level

5

Income Option, id. ¶ 38; (3) the issuance of "deceptive or uninformative disclosures . . . regarding the disadvantages of the Level Income Option," id. ¶ 41; (4) defendants' failure to distribute a Summary Plan Description that adequately disclosed the disadvantages of the Level Income Option, id. ¶ 45; and (5) defendants' failure to sufficiently "explain the relative value of the optional forms of benefit" available under the Plan.  Id. ¶ 49; see also id. ¶¶ 27-30.  Based on these and other allegations, plaintiffs seek, inter alia, an order requiring defendants "to take all necessary steps to make the Level Income Option fully compliant with the law, including eliminating any interest payments and eliminating payments after a [plaintiff's] loan has been paid in full," and prohibiting defendants "from collecting any interest payments or any payments made by a [plaintiff] after their loan has been paid in full." Compl. at 18.  These Prayers for Relief plainly demonstrate that plaintiffs seek injunctive relief relating to defendants' alleged violations of ERISA's disclosure and fiduciary duty requirements, and that plaintiffs accordingly need not make any showing of individual harm with regard to these allegations.

Further, to the extent that plaintiffs are required to allege injury-in-fact, the Court is satisfied that they have met their burden.  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing.  Lujan, 504 U.S. at 561.  Indeed, "[a]lthough standing is a fundamental jurisdictional requirement, it is still

6

subject to the same degree of proof that governs other contested

factual issues."   Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003)

Here, the essence of plaintiffs' Complaint is that they each

elected to enter into a pension program that increased plaintiffs'

retirement payments for a certain period of time in the form of so-

called loans, but which, if plaintiffs live long enough, will require

them to repay those "loans" at huge interest rates.  On the face of

the Complaint, it does not appear that any plaintiff has suffered any

economic harm to date.  Nevertheless, as a result of defendants'

alleged fiduciary breaches, plaintiffs have a binding obligation

against them that, in a foreseeable number of cases, will result in

them being forced to pay back to defendants substantially more than

they received.  This alleged harm, far from being "conjectural" or

"hypothetical," concretely affects plaintiffs "in a personal and

individual way," such that each "has a personal stake in the

controversy."  Baur, 352 F.3d at 632.

Defendants argue that plaintiffs have not suffered any

injury, because payments under the Level Income Option are the

actuarial equivalent of payments made under other benefit options,

and plaintiffs accordingly receive benefits equal in value to the

benefits they otherwise would have received.  Memorandum of Law in

Support of Defendants' Motion to Dismiss ("Def. Mem.") at 16.  As an

initial matter, the question of whether the benefits plaintiffs

received pursuant to the Level Income Option were in fact the

actuarial equivalent of benefits pursuant to other pension plans

presents a complex question of fact that is not properly resolved on a motion to dismiss.  More fundamentally, even assuming that defendants' characterization of the Level Income Option is correct, plaintiffs nevertheless assert viable allegations that they were presented with an option, that defendants made false and misleading misrepresentations and omissions concerning that option in breach of their fiduciary duties, and that plaintiffs stand to suffer significant monetary losses as a result of those breaches.  At this stage of the proceeding, such allegations are more than sufficient for purposes of Article III.  See Ross v. Bank of Am., N.A., 524 F.3d 217, 222 (2d Cir. 2008) ("Injury in fact is a low threshold, which we have held 'need not be capable of sustaining a valid cause of action,' but 'may simply be the fear or anxiety of future harm.'") (citation omitted).

As to redressability, defendants contend, and plaintiffs do not dispute, that plaintiffs' claims fall under ERISA § 502(a)(3), which permits ERISA beneficiaries "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."  28 U.S.C. § 1132(a)(3); see Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (noting that ERISA section 502(a)(3) serves "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy").

To the extent that plaintiffs seek injunctive relief, such relief generally is appropriate only "when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted."  Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005).  Here, the gravamen of plaintiffs' Complaint is that defendants failed to disclose material aspects of the Level Income Option, and that the Level Income Option, in and of itself, amounted to a breach of the fiduciary duties that defendants owed to plaintiffs, because it subjected plaintiffs to potentially unfair, unanticipated financial obligations and deceived them into choosing to participate in an allegedly unfair retirement program.  This alleged harm cannot be compensated by money damages, neither party has identified an alternative or effective remedy that plaintiffs could avail themselves of, and indeed, money damages are not an available remedy under section 502(a)(3).  Great-West Life & Annuity Ins. Co. V. Knudson, 534 U.S. 204, 210 (2002).  Moreover, as noted, plaintiffs allege that they will suffer irreparable harm as a result of defendants' deceitful and misleading course of conduct.  Taken together, plaintiffs' factual allegations, which the Court accepts as true at this stage, suffice to demonstrate that they are entitled to an injunction, inter alia, eliminating any interest payments above a specified percentage, eliminating payments after a particular loan has been paid in full, and modifying plaintiffs' plans on a going-forward basis to ensure that such plans are fair.  Such relief merely would put plaintiffs back into the position they would have been had they not been deceived by defendants, and squarely falls within the

9

purview of section 502(a)(3).  See Matthews v. Chevron Corp., 362

F.3d 1172, 1186 (9th Cir. 2004) (holding that the relief sought by

plaintiffs "simply puts them in the position they would have been had

[defendant] not breached its fiduciary duty").

        To the extent that plaintiffs seek restitution, or an

injunction to compel the payment of money, such relief must be

"equitable," Coan v. Kaufman, 457 F.3d 250, 262 (2d Cir. 2006), in

that plaintiffs' claim "must seek not to impose personal liability on

[defendants], but to restore to [plaintiffs] particular funds or

property in the [defendants'] possession."  Great-West Life & Annuity

Ins. Co. V. Knudson, 534 U.S. 204, 214 (2002).  In other words, in

order to obtain monetary relief, plaintiffs must show that defendants

either "unjustly received from the plaintiff[s] a benefit, such as a

payment," or that defendants "hold[] funds or property that in good

conscience should belong to the plaintiff[s]."  Gerosa v. Savasta &

Co., 329 F.3d 317, 321 (2d Cir. 2003).  At this early stage of the

litigation, it is unclear whether defendants have unjustly received

any payments from plaintiffs, and whether any plaintiff has paid back

to defendants money in excess of the amount loaned.  Assuming that

they have, however, and accepting all factual allegations as true,

defendants would be in possession of property that should be restored

to plaintiffs.  Thus, an award of restitution to plaintiffs would

squarely fall within the purview of section 502(a)(3).  That such

relief would take the form of monetary payments does not render this

any less true.  See Matthews, 363 F.3d at 1186 (noting that

10

"[a]lthough in this instance the district court's remedy will result
in [defendant] paying plaintiffs 'sums of money'" in the form of
benefits lost due to defendant's breach of its fiduciary duties, "the
mere payment of money does not necessary render the award
compensatory 'monetary damages'").  Accordingly, for the foregoing
reasons, the Court denied defendants' motion to dismiss Counts 1
through 4 of the Complaint.

Defendants next move to dismiss plaintiffs' Fifth, Sixth, and
Seventh Claims for Relief (which allege fraudulent inducement, breach
of fiduciary duty, and usury, respectively), on the ground that these
claims are preempted by ERISA.  The Court agrees.

ERISA explicitly "supersede[s] any and all State laws insofar
as they may now or hereafter relate to any employee benefit plan[.]"
29 U.S.C. § 1144(a).  Thus, all common law causes of action that
"relate to" an employee benefit plan fall under ERISA's express
preemption clause.  Pilot Life Ins. v. Dedeuax, 481 U.S. 41, 47-48
(1987) (noting that "the pre-emption clause is not limited to 'state
laws specifically designed to affect employee benefit plans'")
(citation omitted).

Here, plaintiffs' fraudulent inducement claim alleges that
defendants "knowingly issued false and misleading oral and written
representations to induce Plaintiffs and Class members to chose [sic]
the Level Income Option," Compl. ¶ 52, and plaintiffs' breach of
fiduciary duty claim alleges that defendants, "[i]n contravention of
their fiduciary duties, . . . took steps actively to conceal material

11

information from Plaintiffs and Class members, as alleged throughout this Complaint."  Id. ¶ 60.  Both of these claims, however, largely reiterate and are duplicative of the ERISA claims set forth in plaintiffs First and Second Claims for Relief, which allege, inter alia, that defendants "fraudulently induce[ed] and encourage[ed] Plaintiffs and the Class members to opt for the Level Income Option," and that defendants "failed to disclose . . . the disadvantages of the Level Income Option."  Id. ¶¶ 37, 41.  Moreover, plaintiffs' fraud and fiduciary duty claims directly relate to plaintiffs' employee benefit plans and allege misconduct by defendants in the administration of those plans, claims that fall directly under ERISA's express preemption clause.  See Smith v. Dunham-Bush, Inc., 959 F.2d 6, 10 (2d Cir. 1992)(plaintiff's breach of contract and negligent misrepresentation claims were preempted where plaintiff was an ERISA plan participant, the Complaint explicitly referenced the plan, the oral representation underlying the suit dealt "exclusively" with plaintiff's benefits, and the desired relief would implicate defendant's administration of the plan").  Plaintiffs' argument that such claims "involve misconduct that is wholly independent from the retirement plan," Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 17, flies directly in the face of the allegations set forth in the Complaint, which, as noted, the Court accepts as true.  Accordingly, plaintiffs' Fifth and Sixth Claims for Relief must be dismissed.

12

Plaintiffs' Seventh Claim for Relief, labeled "usury,"
likewise must be dismissed.  As an initial matter, Count Seven
alleges that defendants made certain misrepresentations or omissions
concerning the Level Income Option, that defendants "knew that these
representations were false and untrue at the time they made them,"
and that these misrepresentations or omissions were made "with the
intent that Plaintiffs and Class members would rely upon them."
Compl. ¶ 63.  Thus, on its face, this claim is essentially a claim
for fraud that, for the reasons stated above, is preempted by ERISA.

It is true that Count Seven goes on to allege that "the Level
Income Option would require Plaintiffs and the Class members to pay
interest in excess of 16% in violation of . . . New York's civil (and
even criminal) usury laws."  Id. ¶ 64.  However, ERISA expressly
regulates plan loans to participants, see 29 U.S.C. §§ 1106, 1108,
and applying New York's usury laws to the "loans" at issue here would
thus "duplicate[], supplement[], or supplant[] the ERISA civil
enforcement remedy," and "conflict[] with the clear congressional
intent to make the ERISA remedy exclusive."  Aetna Health, Inc. v.
Davila, 542 U.S. 200, 209 (2004).  Accordingly, such claims under New
York's usury laws as asserted in the instant action clearly "relate
to" plaintiffs' employee benefit plans, and are thus preempted.  See
McLaughlin v. Rowley, 698 F. Supp. 1333, 1339 (N.D. Tex. 1988)
(holding that state usury statute was "preempted by the requirements
of ERISA in section 1108(b)(1), which require plan fiduciaries to
obtain market rates on plan investments").

Plaintiffs contend that ERISA's express preemption provision does not apply to New York's usury laws, because section 514(b)'s savings clause excepts from the preemption clause laws that "regulate[] insurance, banking or securities."  29 U.S.C. § 1144(b)(2)(A).  The savings clause, however, "must be interpreted in light of the congressional intent to create an exclusive federal remedy," and the Supreme Court has emphasized that a state law that falls within the savings clause nevertheless "will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."  Aetna Health, Inc., 542 U.S. at 217-18.  Here, as noted above, ERISA § 502(a)(3) provides the exclusive remedy to redress defendants' alleged ERISA violations. Accordingly, because plaintiffs' usury claims seek to add to the remedies otherwise available under ERISA, such claims conflict with the express provisions of ERISA and are preempted regardless of the savings clause.[2]  Cf. Toussaint v. JJ Weiser & Co., 04 Civ. 2592,

---

[2]  The Court further notes that, notwithstanding ERISA's savings clause, section 514(b)(2)(B)'s "deemer" clause prohibits states from deeming employee benefit plans to be banks for purposes of subjecting such plans to state laws regulating banking.  29 U.S.C. § 1144(b)(2)(B).  Here, there is no dispute that the Plan is an employee benefit plan for purposes of ERISA, and there is no indication that defendants offer banking services or "loans" in the traditional, ordinary sense of the word.  To the contrary, defendants administer and offer early retirement programs in varying forms to participants such as plaintiffs. Thus, even if the savings clause applied, the "deemer" clause applies in this case to preempt state usury laws despite the savings clause.  Cf. Scheirer v. NMU Pension & Welfare Plan, No. 82 Civ. 5544, 1983 U.S. Dist. LEXIS 13743, at *10 (S.D.N.Y. Sept. 15, 1983) (ERISA's "deemer" clause preempted state regulation despite savings clause, because there was "no involvement of insurance companies or conventional insurance contracts, traditional areas of concern to the states," and plaintiff's

2005 U.S. Dist. LEXIS 2133, at *46 n.4 (S.D.N.Y. Feb. 13, 2005)

(claim under New York State Insurance Law preempted despite savings

clause, because claim "constitute[d] 'a separate vehicle' for

obtaining relief beyond what is authorized under ERISA's civil

enforcement provisions").

    Defendants further contend that three of the four named

plaintiffs, namely, plaintiffs Watson, Sheehan, and McGlade,

participated in a "special early retirement program," pursuant to

which they executed releases waiving and releasing defendants "from

any claim, known or unknown, that [the employee] may have . . . based

upon or arising out of the termination of [the employee's] employment

with the Company."  See Def. Mem. at 9-10; Reyes Aff. Exs. K-N.

Although the Complaint refers to defendants' early retirement

program, Compl. ¶ 22, it makes no reference whatsoever to the

releases purportedly signed by plaintiffs.  In order for the Court to

consider the releases on defendants' motion to dismiss, plaintiffs

must have relied "on the terms and effect" of such documents when

drafting the Complaint. Chambers v. Time Warner, Inc., 282 F.3d 147,

153 (2d Cir. 2002).  Here, in the absence of such reliance and with

no discussion of the releases in the Complaint, defendants' arguments

in this respect are premature, and defendants' motion to dismiss in

this respect must therefore be denied.  See Engler v. Cendant Corp.,

434 F. Supp. 2d 119, 127 (E.D.N.Y. 2006) ("Confining its review to

_____

    claims "focuse[ed] on the Plan as a self-sufficient employee
    welfare trust, which is the precise area that Congress sought
    exclusively to regulate under ERISA").

the facts alleged in the amended complaint and the exhibits attached,

the Court finds no reference to any fact regarding whether or not

[plaintiff] signed the general release in favor of [defendant].

Therefore, [defendant's] arguments for dismissing the complaint on

this ground are premature").

Finally, defendants argue that the claims of plaintiffs

Watson, Sheehan, and McGlade must be dismissed as time-barred.  ERISA

breach of fiduciary duty claims must be brought within the earlier of

(1) three years of actual knowledge of the breach, or (2) six years

after the date of the last action that caused the breach, or in the

case of an omission, the last date on which the fiduciary could have

cured the breach.  See 29 U.S.C. § 1113.  Where, as here, plaintiffs

claim to have relied to their detriment on alleged

misrepresentations, the six-year limitations period begins to run

from the date of the misrepresentation, or, at the latest, on the

last date upon which a clarifying communication could have prevented

plaintiffs' detrimental reliance.  See, e.g., Ranke v. Sanofi-

Synthelabo, Inc., 436 F.3d 197, 201-03 (3d Cir. 2006).  Here,

plaintiffs relied on alleged representations and nondisclosures made

in or about July 1999, see Compl. ¶ 23, and began to receive pensions

as of January 1, 2000.  Reyes Aff. Exs. G-I.[3]  Accordingly, the six-

---

[3] The Plan documents attached as Exhibits G, H, and I to the
Reyes Affidavit are referenced in the Complaint, relate to
plaintiffs' claims, form the basis for plaintiffs' allegations,
and are thus properly considered in ruling on defendant's motion
to dismiss.  See In re Ford Motor Co. Erisa Litig., 06-11718,
2008 U.S. Dist. LEXIS 40719, at *28-29 (E.D. Mich. March 31,
2008) ("Courts may consider ERISA plan documents not attached to
a complaint where a plaintiff's claims are 'based on rights under

year limitations period for plaintiffs' claims commenced no later than January 1, 2000, and expired January 1, 2006, long before when this action was commenced.

In cases of fraud or concealment, however, breach of fiduciary duty actions may be commenced no later than six years after the date of discovery of such breach or violation.  See 29 U.S.C. § 1113.  Accordingly, plaintiffs contend that their claims are timely because they were brought within six years of when plaintiffs learned of defendants' alleged fraudulent conduct, which occurred "well after" plaintiffs chose the Level Income Option, and "long after the time to change or cancel their selection of the leveling option." Compl. ¶ 29; Pl. Mem. at 22.

The Second Circuit, however, requires that plaintiffs plead a claim for common law fraud with the particularity required by Fed. R. Civ. P. 9(b) in order to be eligible for the six year "fraud or concealment" exception to ERISA's statute of limitations period.  See Caputo v. Pfizer, 267 F.3d 181, 191 (2d Cir. 2001).  Here, the Complaint does not allege the names of the individuals who made the alleged misrepresentations, only broadly describes the alleged misrepresentations and omissions in question, and fails to specify in any concrete terms when plaintiffs learned of the alleged fraud. Moreover, other than a bald allegation that defendants "derived substantial benefits" from their "false promises," Compl. ¶ 53,

---

a complaint where a plaintiff's claims are 'based on rights under the plans' . . . and where the documents . . . 'are central to plaintiff's claims'") (internal citations omitted).

17

plaintiffs have failed to allege any facts creating an inference of fraudulent intent.  Taken together, these inadequacies unequivocally demonstrate that plaintiffs Watson, McGlade, and Sheehan failed to satisfy Rule 9(b)'s pleading requirements.  See Olsen v. Pratt & Whitney Aircraft, 136 F.3d 273, 275-76 (2d Cir. 1998) (Rule 9(b) not satisfied where plaintiff failed to allege "what was said, or the terms of the advice, counsel, and recommendations (as opposed to the mere gist)" and "who said it"); Oechsner v. Connell Ltd. P'ship, 283 F. Supp. 2d 926, 933 (S.D.N.Y. 2003) (allegations that defendant's breach of fiduciary duties was "motivated by management greed" are insufficient to trigger the fraud or concealment exception to ERISA's statute of limitations).

Because "[p]laintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint," however, Olsen, 136 F.3d at 276, the Court, in its Order of September 12, 2008, granted Watson, McGlade, and Sheehan leave to file an Amended Complaint to demonstrate that their claims fall within the statute of limitations period.

Accordingly, for all of the foregoing reasons, defendants' motion to dismiss was granted in part and denied in part.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          January 26, 2009